```
                     UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

OFFICEMAX INCORPORATED,            :
                                   :
         Plaintiff,                :
                                   :
         v.                        :    Case No. 2:11-cv-21
                                   :
W.B. MASON CO., INC. and           :
WILLIAM H. RAMSEY,                 :
                                   :
         Defendants.               :
                                   :
```

**MEMORANDUM and ORDER**

Plaintiff OfficeMax Incorporated ("OfficeMax") seeks injunctive relief against Defendants W.B. Mason Co. Inc. ("W.B. Mason") and William H. Ramsey, OfficeMax's former employee, who now works for W.B. Mason.  OfficeMax filed a motion for a temporary restraining order and preliminary injunction on January 31, 2011.  ECF No. 6.  The Court held an evidentiary hearing on February 10, 2011, and permitted the parties to file supplemental briefs by February 14, 2011.[1]  For the reasons that follow, the

---

[1] At the conclusion of the February 10 hearing, the Court indicated that it would entertain requests by the parties for an additional evidentiary hearing.  Defendants have indicated that they see no need for an additional hearing.  Defs.' Response, ECF No. 28.  Plaintiff has indicated that it "does not believe that further evidence needs to be taken . . . to decide . . . whether or not Defendant Ramsey is subject to a Confidential Information and Noncompetition Agreement that is enforceable by Officemax[,]" but that it is prepared to provide further evidence relevant to the issue of whether "Ramsey violated provisions of the [] Agreement[.]"  Pl.'s Status Update, ECF No. 30.  Because the Court can resolve the motion solely by addressing the threshold question of whether Ramsey is subject to an agreement enforceable by OfficeMax, it has determined there is no need for an additional evidentiary hearing.

Plaintiff's motion is **denied**.

## Factual Background

William Ramsey went to work for McAuliffe, Inc. ("McAuliffe") in 1983. McAuliffe sold office supplies and office equipment and also serviced and maintained office equipment. Ramsey began working in the McAuliffe warehouse. In approximately 1990, he began working in sales. Over the next five or six years he successfully developed customers for McAuliffe.

In 1996, the owners of McAuliffe agreed to sell the company to Boise Cascade Office Products Corporation ("BCOP"). In connection with the sale, McAuliffe asked Ramsey to sign a "Confidential Information and Noncompetition Agreement" ("the Agreement"). Ramsey signed the Agreement on February 6, 1996.

The Agreement, ECF No. 6-1, provided that Ramsey was executing it in contemplation of the BCOP acquisition of McAuliffe, and that Ramsey intended that his "obligations, duties, and promises in this Agreement" were for the benefit of BCOP. *Id*. Under the Agreement, Ramsey acknowledged that he would accept employment with BCOP after the acquisition, agreed not to divulge McAuliffe's confidential information, and promised to continue to treat such information as confidential after the termination of his employment with McAuliffe. *Id*.

The Agreement also provided that

> [f]or a period of 12 months after termination of my employment with McAuliffe (or for a period of 12 months after a final judgment or injunction enforcing this covenant), I will not . . . engage in the sale or distribution of office supplies, office furniture, or related office products or services, engage in the sale of janitorial supplies, or otherwise engage in the type of work that I presently perform for McAuliffe within sixty (60) miles of any county in which I performed services for McAuliffe in the 12 months prior to my termination of employment.  In agreeing to this restriction, I specifically acknowledge the substantial value to McAuliffe of my customer contacts and agree that such contacts constitute goodwill and a protectable interest of McAuliffe.

*Id.*

The Agreement also provided that it would be freely assignable by McAuliffe to BCOP and that, if requested to do so, Ramsey would "sign a noncompetition agreement in substantially the same form as this Agreement and which names BCOP as the employer." *Id*.  It is undisputed that McAuliffe never issued a written assignment of the Agreement to BCOP, and that BCOP never executed a noncompetition agreement with Ramsey naming BCOP as the employer.

Over Ramsey's signature was an acknowledgment that he signed it with the understanding that the terms were a "condition of [his] employment with McAuliffe[,]" which "controll[ed] his use of certain information and know-how during and after [his] employment with McAuliffe" and "restrict[ed] [his] employment opportunities upon termination of [his] employment with McAuliffe."  *Id*.

3

Ramsey accepted a job at BCOP in 1996.  In 2004, BCOP changed its name to OfficeMax, Inc.  Ramsey continued to work for OfficeMax as a sales representative until November 2009, when, as part of a reorganization, the entire New England sales force was advised that their positions, as previously defined, were being eliminated.  All sales representatives were invited to apply for new positions at OfficeMax; if they did not, they were advised that they would no longer be working for OfficeMax.  As a result of the reorganization, 60 to 70% of the sales force were offered employment; the remainder were no longer employed with OfficeMax.

After applying and obtaining an interview, Ramsey was offered one of the new positions in sales on November 16, 2009.  His new position required him to meet a quota of large customers, meaning customers buying more than $50,000.00 worth of products.  Ramsey believed that such customers were scarce in northern New England, and that it would be difficult to meet his quota.

Eventually Ramsey accepted a job offer from W.B. Mason and resigned from OfficeMax on February 26, 2010.

## Discussion

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain a temporary restraining order without notice upon a showing by specific facts "that immediate and irreparable injury, loss, or damage will result to the movant before the

adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Although it appeared to the Court from the moving papers that OfficeMax had not met this standard because it had failed to make a showing that it would suffer immediate and irreparable harm before the Defendants could be heard in opposition, the Court did feel that OfficeMax had demonstrated a need for a speedy hearing on the issues upon notice.

On a motion for a preliminary injunction, the moving party must show "that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). In this case, having reviewed the contract in question and having held an evidentiary hearing, the Court concludes that OfficeMax has failed to show "a likelihood of success on the merits" or even "sufficiently serious questions going to the merits to make them a fair ground for litigation[.]" *Id*.

The Defendants argue that the unambiguous language of the Agreement indicates that its noncompetition restrictions expired in 1997. They point out that Ramsey's employment with McAuliffe ended some time in 1996 and that the plain language of the contract indicates that the restrictions on Ramsey's activities

were to run for one year following the termination of his employment with McAuliffe.

The Plaintiff argues that the Assignment clause provided that BCOP, and subsequently OfficeMax, had the right to enforce the terms of the Agreement following the termination of Ramsey's employment with any successor employer.

The Assignment Clause must be read in conjunction with all of the clauses of the Agreement. *See Dep't of Corr. v. Matrix Health Sys., P.C.*, 2008 VT 32, ¶12, 950 A.2d 1201 (In construing contract language, "we must consider the contract as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible.") (internal quotations omitted).  The Assignment Clause may only assign that to which Ramsey agreed. *See, e.g., In re Ambassador Ins. Co.*, 2008 VT 105, ¶19, 965 A.2d 486 ("The common law generally presumes that an assignee takes whatever interest the assignor promised.") (citing *Hebert v. Jarvis & Rice & White Ins., Inc.*, 134 Vt. 472, 476 (1976) (explaining that the assignee succeeds "only to such rights as were possessed by the assignor at the time of the assignment")); *see also General Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 676 (2d Cir. 2009) (noting the "familiar proposition that an assignor could only assign a right that it legally possessed and an assignee's rights are no greater than those of the assignor") (quotations omitted).

By the plain language of the Agreement, Ramsey agreed to a noncompetition provision that extended for twelve months after the termination of his employment with McAuliffe.  There is no dispute that Ramsey's employment with McAuliffe terminated in 1996.  The restrictions on Ramsey's employment therefore terminated in 1997.  To be sure, Ramsey agreed that his signing the Agreement was intended to benefit BCOP.  But assuming that OfficeMax now stands in BCOP's shoes and may enforce the Agreement, all it may enforce is the long-expired restrictions that followed the termination of Ramsey's employment with McAuliffe.[2]

Because the plain language of the Agreement is clear, the Court need not address the Defendants' arguments that any ambiguous provisions in the contract must be construed against

---

[2] That it was the intent of the contracting parties for the restrictions on Ramsey's employment to end twelve months after termination of his employment with McAuliffe rather than twelve months after termination of his employment with any other successor employers is further made clear by the portion of the assignment clause that reads, "I further agree that if requested by BCOP, and for the consideration stated above, I will sign a noncompetition agreement in substantially the same form as this Agreement and which names BCOP as the employer."  If the contracting parties truly had intended the noncompetition restrictions to end twelve months after termination of Ramsey's employment with BCOP, this sentence would make little sense since a second agreement in "substantially the same form as th[e] [first] Agreement," but naming BCOP as the employer, would do no more than what OfficeMax claims the original Agreement did.  *See Northern Security Insurance Company v. Mitec Electronics, Ltd.*, 2008 VT 96, ¶24, 965 A.2d 447 (courts should "strive to avoid" readings that would "render portions of [contracts] mere surplusage").

BCOP.  *See* Defs.' Opp'n to Mot. for TRO and Prelim. Inj. at 4, ECF No. 23 (citing *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 604 (1986) ("We agree that when competitive employment is restricted, narrow interpretation of the covenant is proper."); *U.S. ex rel. Harris v. EPS, Inc.*, No. 2:05-CV-212, 2006 U.S. Dist. LEXIS 30012, at *13 (D. Vt. May 16, 2006) ("There is a well-established rule in Vermont, as elsewhere, that ambiguous terms of a document must be construed against the drafter.")).

Even were the Court to agree with OfficeMax that it is entitled to enforce the Agreement, and that the Agreement somehow continued to apply during the term of Ramsey's employment with OfficeMax, that term of employment with OfficeMax terminated in November 2009, when the jobs of the entire New England sales force were eliminated and he was re-hired into a new position. Therefore, even under OfficeMax's interpretation of the Agreement, its restrictions expired in November 2010 and there is no continuing breach of the contract to be enjoined.

Because OfficeMax has failed to demonstrate "either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation," it is not entitled to a preliminary injunction. *Brenntag Int'l Chems.*, 175 F.3d at 249 (2d Cir. 1999).  The motion is **denied**.

Dated at Burlington, in the District of Vermont, this 18th day of February, 2011.

                                            <u>/s/ William K. Sessions III</u>
                                            U.S. District Court Judge